UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re ) Case No. 05-30388-A-7
)
MARIA ANGELICA MORENO, ) Docket Control No. SF-3
)
) Date: March 27, 2006
Debtor. ) Time: 9:00 a.m.
)
_____ )

### MEMORANDUM[1]

The chapter 7 trustee, Lawrence Gray, objects to the debtor's claim of exemption of an 18.2% fractional interest in real property located at 2402 Polk Way, in Stockton, California ("Property"). The debtor, Maria Moreno, has claimed the exemption pursuant to Cal. Civ. Proc. Code § 704.730(a)(2), in the amount of $55,000.

The trustee's objection to this objection will be overruled.

The trustee alleges that the debtor's interest in the Property "is attributable to property that the debtor disposed of within 10 years of the petition date with the intent to hinder, delay, or defraud a creditor and is attributable to property that

---

[1] This Memorandum includes the court's findings of fact and conclusions of law. It supplants the findings and conclusions contained in the Final Ruling appended to the minutes of the hearing.



the debtor could not otherwise exempt." See 11 U.S.C. § 522(o).

In the context of a marital dissolution proceeding ("Dissolution"), the debtor received an equalization payment of $62,500 from her former husband. The source of this equalization payment was the sale or refinance of the debtor's former residence which she had owned with her former husband. In connection with the Dissolution, the debtor vacated that residence, deeded her interest in the residence to her former husband, and her former husband then refinanced the residence in order to pay the debtor the equalization payment.

The court in the Dissolution determined that unsecured debts of approximately $30,097 were the debtor's separate obligations. The trustee claims that "instead of paying her [these obligations] . . . , the [d]ebtor paid $55,000 to . . . Jesus Soltero," thereby purchasing 18.2% interest in the Property. She purchased it on August 11, 2005, 13 days before filing her petition on August 24, 2005.

The debtor opposes the objection, arguing that it is untimely because the trustee concluded the debtor's meeting of creditors on September 23, 2005 and objections to exemption claims were due on October 23, 2005 as prescribed by Fed. R. Bankr. P. 4003(b). In the alternative, the debtor contends that the trustee has not carried the burden of proving she converted nonexempt property into exempt property with the intent to hinder, delay, or defraud creditors.

The court agrees with the debtor that the trustee concluded the meeting of creditors on September 23, 2005 and, thus, the instant objection is untimely under Fed. R. Bankr. P. 4003(b).

1 | Rule 4003(b) provides that a party in interest has 30 days after
2 | the meeting of creditors or "any amendment to the list or
3 | supplemental schedules is filed, whichever is later," to object
4 | to a claim of exemption.

5 | Fed. R. Bankr. P. 2003(e) allows a trustee to adjourn (i.e.,
6 | continue) a creditors' meetings "from time to time by
7 | announcement at the meeting of the adjourned date and time
8 | without further written notice." The trustee, thus, can continue
9 | a meeting of creditors by adjourning it and announcing at the
10 | meeting the date and time for the continued meeting. The rule
11 | does not require the trustee to give written notice of the
12 | continuance. See In re Clark, 262 B.R. 508, 514 (B.A.P. 9th Cir.
13 | 2001).

14 | A trustee may also announce a continuance at the meeting
15 | without specifying the date and time of the continued meeting.
16 | The trustee must later give written notice of the date and time
17 | of continued meeting. However, that notice must be given within
18 | a reasonable time after the prior meeting. The Ninth Circuit has
19 | ruled that reasonable time means at least within 30 days after
20 | the last meeting. See In re Smith, 235 F.3d 472, 476 (9th Cir.
21 | 2000).

22 | This is to ensure that a trustee does not continue a
23 | meetings solely for the purpose of extending the 30-day deadline
24 | of Fed. R. Bankr. P. 4003(b). See In re Smith, 235 F.3d 472, 476
25 | (9th Cir. 2000). If the trustee only needs an extension, the
26 | trustee must seek one from the court. See Fed. R. Bankr. P.
27 | 4003(b).
28 | ///

In the present case, the trustee held the meeting of creditors on September 23, 2005 ("September meeting"). The debtor attended that meeting, but the parties dispute whether the trustee concluded it.

The transcript of the September meeting shows that the trustee concluded the meeting. The trustee said "I don't have any other questions. Thank you. Thanks. Chuck."

On September 26, 2005, the trustee filed with the court a report of the September meeting, noting a continuance of the meeting to October 21, 2005 ("October meeting").

These facts are different from the facts in Smith and Clark. In both Smith and Clark, the trustees did not orally conclude the meeting. They merely failed to announce the date and time of a continued meeting. Here, on the other hand, the trustee concluded the September meeting and thereafter unilaterally decided to continue it despite in effect telling the debtor it had been concluded.

The trustee's intent with regard to conclusion of the September meeting is reflected by his actions in the months after that meeting. Although the debtor did not attend the October meeting, the trustee did not request the court to issue an Order to Show Cause as is the practice in this court when a debtor fails to appear at the meeting of creditors.

When the debtor did not appear at the third and last scheduled creditors' meeting, on November 18, 2006 ("November meeting"), the trustee concluded the meeting. Once again, the trustee did not seek the issuance of an Order to Show Cause.

///

-4-

On December 19, 2005, the last day to file an objection to an exemption claim based on the conclusion of the November meeting, the trustee filed the instant objection. These facts suggest that the trustee continued the September and October meetings for one purpose only, to extend the deadline for filing objections to exemption claims.

This conclusion is further supported by the trustee's motion to extend the deadline for filing complaints under 11 U.S.C. § 727. In that motion, filed on November 22, 2005, the trustee did not cite the debtor's failure to attend creditors' meetings as basis for an extension. Instead, he cited a failure by the debtor to respond to a document production request. The court ruled against the trustee, however, making the following findings:

> "*After reviewing the record, the court agrees with the debtor, that her response to the document production requests did not cause a delay to the trustee's investigation. The trustee made only one document production request [of] the debtor, after the September 23, 2005 meeting, on September 26, 2005. In this request, the trustee sought tax returns, giving the debtor 30 days to respond. The debtor responded timely on October 19, 2005. In the same request, the trustee wrote "[i]n addition, my attorney will be requesting additional documents for my review." This means that the document production request by the trustee's counsel was not out of "frustrat[ion]" with the debtor, but was anticipated even at the time the trustee made his request. Based on this, the court finds the representations of the trustee's counsel not to be credible and further finds that the debtor complied with the trustee's request of documents.*"

Based on these facts, the court finds that the trustee first concluded the September meeting and then decided to continue it, not to examine the debtor, but solely for the purpose of extending the deadline for filing an objection to the debtor's

Case 05-30388    Filed 03/28/06    Doc 58

exemptions without compliance with Fed. R. Bankr. P. 4003(b). The court reaches the same conclusion with respect to the October and November meetings. Such conduct is inappropriate and impermissible. See In re Smith, 235 F.3d at 476.

The court finds that the trustee concluded the creditors' meeting on September 23. Hence, the deadline for objections to exemption claims expired on October 23, 2005, 30 days after the September Meeting. Accordingly, the objection will be overruled as untimely.

In the alternative, the court will also address the merits of the objection.

Rights to exemptions of property are determined as of the date the petition is filed. See In re Kim, 257 B.R. 680, 685 (B.A.P. 9th Cir. 2000); In re Kolsch, 58 B.R. 67, 68 (Bankr. D. Nev. 1986). 11 U.S.C. § 522(o), applicable to cases filed on or after April 20, 2005, provides that a homestead exemption must be reduced by the value attributable to property disposed of by the debtor with the intent to hinder, delay, or defraud creditors during the 10 years prior to the petition date, to the extent that property was not otherwise exempt.

Section 522(o), however, does not abrogate existing case law to the effect that the mere conversion of non-exempt to exempt assets is insufficient, as a matter of law, to establish an intent to hinder, delay, or defraud creditors. See In re Stern, 345 F.3d 1036, 1044 (9th Cir. 2003); In re Jackson, 472 F.2d 589, 590 (9th Cir. 1973). See also, In re Maronde, 332 B.R. 593, 600 (Bankr. D. Minn. 2005) (a post-April 2005 case, stating that "[a] debtor may still convert non-exempt assets into exempt assets on

the eve of bankruptcy, but the conversion must not be done with intent to defraud creditors manifested by extrinsic evidence." Citing Federal Sav. & Loan Ins. Corp. v. Holt (In re Holt), 894 F.2d 1005, 1008 (8th Cir. 1990); In re Vangen, 334 B.R. 241, 247 (Bankr. W.D. Wis. 2005)).

This interpretation of section 522(o) is consistent with its statutory language. The section does not state that it applies to all dispositions of property within 10 years of the petition date. It applies only to dispositions made "with the intent to hinder, delay, or defraud a creditor." If Congress desired to change the rule permitting the conversion of non-exempt to exempt assets, it would have provided that the mere conversion rises to a presumption of an intent to hinder, delay or defraud, or it would have stated outright that such conversion is impermissible.

Instead, Congress specifically provided in section 522(o) that there be both a conversion of nonexempt property to exempt and an "intent to hinder, delay, or defraud."

Moreover, section 522(o) applies to dispositions of property within 10 years of the petition date. If the court reads intent to hinder, delay, or defraud into every conversion of non-exempt to exempt property, without additional extrinsic evidence of such intent, almost no property would be exemptible because most property debtors claim as exempt is converted from non-exempt property within ten years before the petition date. Such interpretation of section 522(o) would defeat its purpose, to eradicate only conversions made with the intent to hinder, delay, or defraud.

///

1  The trustee's only evidence of intent to hinder, delay, or
2  defraud creditors is that the debtor took a portion of the money
3  she received in the Dissolution and bought an exempt interest in
4  a home even though she owed money to creditors.  It is important
5  to note, however, that the trustee has not demonstrated that the
6  debtor incurred new debt and used that debt to finance the
7  purchase of a new residence, or to finance other expenses thereby
8  permitting the debtor to use the Dissolution payment to buy a
9  house.  The debts the debtor did not pay were the same debts that
10 the debtor owed when she owned the former residence with her
11 spouse.

12  The trustee also suggests that the consensual Dissolution
13 judgement is evidence of an intent to hinder, delay or defraud
14 creditors because it allocated debts to the debtor which she
15 intended to discharge in a bankruptcy.  However, if the debtor's
16 former husband was personally liable to a creditor, merely
17 allocating the debt to the debtor did not terminate the former
18 husband's personal liability.  See Cal. Fam. Code. § 916(a)(1).
19 In that situation, the former husband remains personally liable
20 despite the Dissolution judgment.

21  As to the former community property of the debtor and her
22 former husband, the Dissolution judgment conceivably might have
23 had more of an impact on the rights of creditors.

24  The former community property awarded in the divorce to the
25 debtor is not liable for debts incurred by her former husband
26 before or during marriage to the extent those debts are not
27 allocated to the debtor by the Dissolution judgment.  See Cal.
28 Family Code § 916(a)(2).

Likewise, the former community property awarded in the divorce to the debtor's former husband is not liable for debts incurred by the debtor before or during marriage to the extent those debts are not allocated to the former husband by the Dissolution judgment. See Cal. Family Code § 916(a)(2).

So, by awarding $62,500 of the former community property to the debtor in the Dissolution judgment, any creditor owed a debt incurred by the former husband could not pursue the $62,500 unless the Dissolution judgment also allocated that debt to the debtor. However, there is no evidence that any such creditors exist. In fact, it appears the opposite occurred. The Dissolution judgment allocated all of the unsecured debts to the debtor as well as the equity from her former residence.[2] Absent this bankruptcy and/or a claim of exemption, all creditors, even those whose debts were incurred by the former husband, could have satisfied their claims from the $62,500. The trustee, then, is really complaining that the debtor invested the $62,500 in a new residence and then exempted her interest in the residence. As discussed herein, merely claiming an exemption is not enough to prove an intent to hinder, delay or defraud creditors.

If the debtor had purchased her former husband's interest in their residence, instead of him buying out her interest in the residence, the debtor would have continued to live at that residence and would have claimed the same exemption albeit in a different property. Such an exemption would not have involved

---

[2] There is no evidence that the former husband received any equity in the residence by virtue of the Dissolution judgment.

any transfers of property by the debtor and the trustee would not have been able to argue that the debtor disposed of property within 10 years of the petition date under section 522(o). But, because the debtor was not in a financial position to purchase her interest in the residence she occupied with her former husband, he purchased her interest by paying her $62,500, which she used to purchase an interest in the Property. See Declaration of Maria Moreno, filed February 13, 2006, ¶ 5. Just because the debtor was not in a financial position to purchase her former husband's interest and retain that residence, her conversion of her exemptible interest in that residence into an exemptible interest in the Property is not evidence of intent to hinder, delay or defraud creditors.

    Although the trustee alleges that the debtor defended collection lawsuits, "fac[ed] mounting debt pressures," and received collection notices, this is not evidence of, or persuasive evidence of, an intent to hinder, delay, or defraud creditors. Were this evidence, in and of itself, of such an intent, few debtors would be able to claim exemptions. After all, exemptions are provided so that persons with debt problems may preserve for themselves basic and necessary assets for their maintenance, support and livelihood. They are afforded to debtors precisely because they are in financial trouble. If a debtor's financial distress meant that an exemption could not be claimed, the very purpose of permitting exemptions would be frustrated.

    It must also be mentioned that the money used by the debtor to buy her new house, was derived from her former residence.

Because the debtor vacated her former residence in connection with the Dissolution, it is likely the proceeds were not exempt. Nonetheless, it is difficult for the court to conclude (and it will not conclude) that the debtor was hindering, delaying, or defrauding creditors when she took money realized from her former residence in order to buy a new residence. If she had converted the money into, say, an exempt musical instrument that she did not know how to play, the conclusion might be different.

The trustee has not proven any act by the debtor evidencing an intent to hinder, delay, or defraud. The mere conversion of non-exempt to exempt property for purposes of bankruptcy estate planning is not sufficient to establish such an intent. The court notes that the lack of extrinsic evidence of intent here is distinguishable from In re Maronde, where evidence of such intent existed. See In re Maronde, 332 B.R. 593, 596-97, 600-01 (Bankr. D. Minn. 2005). Before converting the non-exempt to exempt assets at issue, the debtor there had already made an attempt to defraud his creditors by withdrawing cash advances from his credit cards to pay off the balance on a home equity line of credit against his home. Id. The court found that the conversion in question was part of a larger scheme to defraud creditors. In the present case, the trustee has alleged no extrinsic evidence of intent to hinder, delay, or defraud. Hence, the court finds no intent to hinder, delay, or defraud. See Wudrick v. Clements (In re Wudrick), 451 F.2d 988, 989-90 (9th Cir. 1971) (reversing on the grounds that mere conversion of non-exempt to exempt property is insufficient to support a finding of fraud).

Lastly, the court also notes that the "intent to hinder, delay, or defraud" language of section 522(o) is identical to the language of 11 U.S.C. § 727(a)(2), which allows a court to apply the extraordinary remedy of denying a debtor's discharge. This shows that Congress, in enacting section 522(o), intended to reduce a debtor's exemption interest in a real property only if the debtor had the same intent that warranted a denial of discharge. This is a high standard that, as discussed above, requires extrinsic evidence of such an intent. It requires more than just the conversion of non-exempt to exempt property, the existence of creditors, the receipt of collection notices, or the defending of collection lawsuits. Creditors' attempts to collect from debtors are incidental to most exemption planning. Exemptions are made available to bankruptcy debtors and judgment debtors because they are or may be pursued by creditors. It would be an odd exemption that was unavailable because the debtor needed it.

    The trustee's assertion that the debtor hindered, delayed, or defrauded creditors is based on nothing more than the fact that the debtor, even though she owed pre-existing unsecured debt, converted nonexempt cash into an exempt homestead. As discussed above, this is not a sufficient basis for inferring an intent to hinder, delay, or defraud creditors. The fact that the debtor said she intended to file a bankruptcy petition, rather than filing it without first announcing her intention, adds nothing to the analysis. The trustee's objection pursuant to section 522(o) will be overruled.

///

1 | Counsel for the debtor shall lodge a proposed order.
2 | Dated: 28 March 2006

By the Court

_____
Michael S. McManus, Chief Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Abram Feuerstein
20 N Sutter St 4th Fl
Stockton, CA 95202

Charles Hastings
4568 Feather River Dr #A
Stockton, CA 95219

Maria Moreno
2402 Polk Way
Stockton, CA 95207

Lawrence Gray
4719 Quail Lakes Dr #G
PMB #255
Stockton, CA 95207

Office of the U.S. Trustee
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: March 28, 2006

Susan C. Cox
Judicial Assistant to Judge McManus